UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**Center for Bio-Ethical Reform, Inc., et al.,**

        **Plaintiffs,**

v.                                                                    **Case No. 3:03-cv-057**
                                                                    **Judge Thomas M. Rose**

**City of Springboro, et al.,**

        **Defendants.**

---

**DECISION AND ENTRY ADOPTING REPORT AND RECOMMENDATIONS OF UNITED STATES CHIEF MAGISTRATE JUDGE MERZ** (DOC. 82)**, OVERRULING PLAINTIFFS' OBJECTIONS TO THE REPORT AND RECOMMENDATIONS OF CHIEF MAGISTRATE JUDGE MERZ,** (DOC. 88)**, GRANTING MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS BRIAN HUBBARD, CLEARCREEK TOWNSHIP, PETER J. HERDT, AND JEFF PIPER**, (DOC. 63)**, GRANTING MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS MICHAEL BURKE, STEVEN MORRIS, AND TIME SHAW,** (DOC. 65)**, GRANTING THE MOTION FOR SUMMARY JUDGMENT BY THE CITY OF SPRINGBORO, JEFFERY KRUITHOFF, TIM PARKER, LISA WALSH, RANDY PEAGLER, NICK CLARK, AND ERIC KUHLMAN,** (DOC. 67)**, DENYING THE MOTION FOR SUMMARY JUDGMENT BY PLAINTIFFS CENTER FOR BIO-ETHICAL REFORM, INC., MARK HARRINGTON, QUENTIN PATCH, DALE HENKEL,** (DOC. 66)**, DIRECTING THAT JUDGMENT BE ENTERED IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFFS AND TERMINATING THE INSTANT CASE.**

---

Pending before the Court are Plaintiffs' Objections to the Report and Recommendations of Chief Magistrate Judge Merz. Doc. 88. The Report and Recommendation, Doc. 82, concludes that summary judgment should be granted to Defendants on all counts. As required by 28 U.S.C. §

636(b) and Federal Rule of Civil Procedure 72(b), the Court has made a *de novo* review of the record in this case. Upon said review, the Court finds that Plaintiff's objections, Doc. 88, to the Magistrate Judge's Report and Recommendations, Doc. 82, are not well taken and they are hereby **OVERRULED**. Accordingly, the Court **GRANTS** the motion for summary judgment by defendants Brian Hubbard, Clearcreek Township, Peter J. Herdt, and Jeff Piper, Doc. 63, **GRANTS** the motion for summary judgment by defendants Michael Burke, Steven Morris, and Time Shaw, Doc. 65, **GRANTS** the motion for summary judgment by the City of Springboro, Jeffery Kruithoff, Tim Parker, Lisa Walsh, Randy Peagler, Nick Clark, and Eric Kuhlman, Doc. 67, and **DENIES** the motion for summary judgment by Plaintiffs Center for Bio-Ethical Reform, Inc., Mark Harrington, Quentin Patch, Dale Henkel. Doc. 66.

I.  Background

The case stems from a traffic incident that escalated into a *Terry* stop. Plaintiffs were driving a truck that was blocking traffic on Pennyroyal Road in Springboro, Ohio. When Springboro Police Officer Nick Clark came upon this violation of Ohio's traffic laws, and the traffic backup it caused, he investigated. Upon approaching the cab of the truck, he saw the occupants use a radio and heard them say, "the police are approaching me. The police are approaching me." Clark Depo. at 40. At the truck window, he was met by a man in body armor and a kevlar helmet, who explained that he was with a group of pro-life activists that intended to spend that night at the house and was having difficulty negotiating the turn into the driveway. Clark also noticed the truck's escort vehicle, which was a police car replica, replete with internal caging.

Clark, who was concerned by the accoutrements he had observed, backed away from the cab, and contacted Springboro Detective Time Parker. Parker was also concerned and contacted the

domestic terrorism unit of the Federal Bureau of Investigations, prompting FBI Agent Morris to become involved, supported by other named defendants. Eventually, the truck was relocated to a church parking lot, which Plaintiffs had prearranged as a back up parking location. Plaintiffs complain that they were detained, from start to finish, for three hours before the FBI was satisfied that Plaintiffs were not involved in any criminal activity. Plaintiffs assert both that their anti-abortion speech on the back of their truck was readily apparent and that they were forced twice to pull up tarps on the sides to reveal the signs underneath. Plaintiffs do not point to any evidence that their constitutionally protected speech motivated unconstitutional actions on the part of Defendants.

When Parker phoned Morris, he informed him that a police officer had encountered a vehicle that seemed suspicious. Morris was told that[4], upon approaching the vehicle, the officer had thought that it was "some sort of police, law enforcement activity, because of the description of the vehicle, the fact that the patrol officer had observed, you know, vests and tactical gear and weapons and stuff that these people had in the car, but then the–when the officer made contact with the occupants in the vehicle, I guess they just said[, ']we're on an operation[,'] or something to that effect and, you know, rolled the window up on them or something. I guess the inference was they were evasive or at least weren't providing a lot of information." Morris depo. at 23. This officer then phoned Springboro and Clearcreek Township police, to see if they had any operations going on in the area. *Id.* They then phoned Morris at FBI to see if they had an operation in the area.

There is uncontradicted evidence that Defendants knew that there have been assassinations

---

[4] For simplicity's sake, the Court has chosen here to consider the evidence relating to FBI agent Morris. The evidence has been considered as regards each defendant, but since the Report and Recommendation correctly concludes that there has been no violation of rights and certainly no violation of clearly established rights, there is not need to catalogue the evidence as regards each defendant.

of doctors who perform abortions. They knew that, in contrast to pure speech, some anti-abortion forces attempt to threaten or intimidate doctors who perform abortions. Indeed, there has been an unfortunate incident of an abortion provider being assassinated by someone seeking to protect the unborn. Defendants further knew that a doctor lived in the vicinity of this stop, but did not know if this doctor performed abortions.

The faux police equipment further concerned Morris, as it had all of the investigating officers. The Ohio Revised Code stipulates that "No person shall impersonate a peace officer or a private police officer." Ohio Rev. Code § 2921.51(B). "'Impersonate' means to act the part of, assume the identity of, wear the uniform or any part of the uniform of, or display the identification of a particular person or of a member of a class of persons with purpose to make another person believe that the actor is that particular person or is a member of that class of persons." Ohio Rev. Code § 2921.51(A)(3).

All of this was transpiring nine months after the 9/11 attacks in a country on heightened alert, with criticisim focusing on the FBI for its failure to prevent either of the attacks on the World Trade Center, or the attack on the Oklahoma City Federal Building. Morris reported to the scene from the FBI Cincinnati office, and, once assured that no criminal activity was afoot, advised the officers to let the protesters be on their way.

Plaintiffs filed suit, claiming that Defendants had violated their First Amendment right to freedom of speech under color of state law, that Defendants had conspired to deprive them of their freedom of speech, that Defendants had violated their Fourth Amendment right to be free from searches and seizures, and that Defendants had conspired to deprive them of their Fourth Amendment rights. Doc. 26.

Plaintiffs and Defendants have both moved for summary judgment. These and other motions were referred to Chief Magistrate Michael R. Merz, who recommended judgment for Defendants on all claims.

**II.     Analysis**

Plaintiff's objection to the Report and Recommendation provides scant improvement upon the general objection format that the Sixth Circuit has ruled insufficient. While Plaintiff asserts that several pages of the Magistrate's findings of fact and conclusions of law are incorrect, it cites the Court to no record evidence that would support this assertion. "A district judge should not have to guess what arguments an objecting party depends on when reviewing a magistrate's report." *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991) (quoting *Lockert v. Faulkner*, 843 F.2d 1015, 1019 (7th Cir. 1988) and citing *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989); and *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984)). While this Court stands ready to provide a *de novo* review of the Chief Magistrate's factual findings, it is not required to "wade through and search the entire record for some specific facts that might support the [objecting] party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) (explaining the standard for granting a motion for summary judgment). If the Court were to be so required, it would "mak[e] the initial reference to the magistrate useless. The functions of the district court [would be] effectively duplicated as both the magistrate and the district court [would] perform identical tasks. This duplication of time and effort [would] waste[] judicial resources rather than sav[e] them, and [would] run[] contrary to the purposes of the Magistrates Act." *Howard*, 932 F.2d at 509.

The Court has, nevertheless, reviewed all of Plaintiffs' filings with regard to the Report and

Recommendations, including the filings stricken for failure to comply with local rules, and has found nothing that would convince it not to adopt the Report and Recommendation. It will, however add the following observations.

**A.   Federal Agents**

Specifically, with regard to the assertion that the federal agents were acting under the color of state law in suppressing free speech, the Court is not persuaded that there is evidence that would support the application of this principal in the instant case. In any event, however, the federal agents possess qualified immunity from prosecution. See *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727 (1982).

**B.   First Amendment Violation**

In order to establish the elements of a retaliation claim under 42 U .S.C. § 1983, a plaintiff must show that he was engaged in constitutionally protected activity, that the defendant's adverse action caused her to suffer an injury which would "chill a person of ordinary firmness from continuing ... in that activity," and that the adverse action was motivated in part by the exercise of the constitutional rights. See *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir.1998).

In the instant case there is no evidence that any adverse action was motivated by the exercise of constitutional rights. While Plaintiffs have ample evidence that Defendants were aware of Plaintiffs' constitutionally protected activity, and even that the constitutionally protected activity caused an aspect of Defendants' suspicion of possible criminal activity, there is no evidence but that Defendants were motivated out of a concern for public safety. Additionally, the Court finds as a matter of law that, when stopped for a traffic violation, and found to be in possession of police equipment, radio equipment, body armor and kevlar helmets, a three hour detention would not chill

a person of ordinary firmness from continuing in this particular activity, participation in the public debate on one of the most contentious issues in society today.

Moreover, government officials performing discretionary functions are afforded a qualified immunity under 42 U.S.C. §1983 as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727 (1982); *Christophel v. Kukulinsky*, 61 F. 3d 479, 484 (6th Cir. 1995); *Adams v. Metiva*, 31 F. 3d 375, 386 (6th Cir., 1994); *Flatford v. City of Monroe*, 17 F. 3d 162 (6th Cir. 1994). The question is not the subjective good or bad faith of the public official, but the "objective legal reasonableness" of his or her action in light of clearly established law at the time the official acted. *Anderson v. Creighton*, 483, U.S. 635, 107 S. Ct. 3034 (1987). As regards the first claim, it is not clearly established that a law enforcement officer may not take into consideration the history of the adherents of cause to engage in violence when determining whether or not to detain them for an investigation concerning their purpose when they are dressed battle-ready. Courts have recognized that, in an absence of evidence that government agents disagree with the message of Plaintiffs, the government may protect against "the possibility that attendees who had been violent at previous rallies would injure themselves, others, or property." *Potts v. City of Lafayette*, 121 F.3d 1106, 1111 (7th Cir. 1997).

**C.     Conspiracy to Violate First and Fourth Amendment Rights**

To prevail on a conspiracy claim, a plaintiff must establish an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and an actual deprivation through overt acts in furtherance of the conspiracy. *Kunik v. Racine County,* 946 F. 2d 1574, 1580 (7th Cir. 1991); *Scherer v. Balkema,* 840 F. 2d 437, 442 (7th Cir. 1988). Plaintiffs have presented

no evidence of an agreement by any Defendants to deprive them of their First Amendment rights.

**D.     Fourth Amendment**

Plaintiffs also claim that they were deprived of their Fourth Amendment right to be secure from unreasonable searches and seizures. The scope of a *Terry* stop search must be "strictly tied to and justified by" the circumstances which render it permissible. *Terry v. Ohio*, 392 U.S. 1, 19, 88 S. Ct. 1868, 1878 (1968). The scope of the reasonable detention is then considered in light of the admitted traffic violation, activity resembling impersonation of a police officer and suspicions of possible domestic terrorism.[1] There is uncontradicted evidence that Plaintiffs were guilty of impeding traffic and bore a resemblance in some regards to police officers. Furthermore, Defendants were understandably concerned by Plaintiffs' body armor. While Plaintiffs protest that it is not reasonable to suspect a terrorist to attract such attention to himself, this is detached from experience. Terrorism, by its nature does not conform to common reason. As easily as one can imagine suicide bombers, one can imagine a protester deciding to draw attention to his cause by

---

[1] As the Supreme Court has noted:

> An arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. See *Whren v. United States*, 517 U.S. 806, 812-13, 116 S. Ct. 1769 (1996) (reviewing cases); *Arkansas v. Sullivan*, 532 U.S. 769, 121 S. Ct. 1876 (2001) (per curiam). That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause. As we have repeatedly explained, "'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'" *Whren*, supra, at 813, 116 S. Ct. 1769 (quoting *Scott v. United States*, 436 U.S. 128, 138, 98 S. Ct. 1717 (1978)).

*Devenpeck v. Alford*, 125 S. Ct. 588, 593-94 (2004).

driving to and murderously storming a building that symbolizes the object of his ire with a sign truck to publicize his cause all the better to news media covering the ensuing siege. On the other extreme of experience, we have seen many pro-life demonstrators persevering in their cause, trusting their safety to something more transcendent than kevlar helmets. Indeed, prior to this case, the Court has not heard of abortion protesters resorting to body armor. The investigating officers' suspicions were understandably aroused. A three-hour detention in these circumstances, circumstances that additionally include knowledge that some anti-abortion forces attempt to threaten or intimidate doctors who perform abortions and knowledge that a doctor lived in the vicinity of the traffic stop, was not excessive in light of the scope.

Moreover, in light of the Supreme Court's recent decision in *Muehler v. Mena*, 125 S. Ct. 1465 (2005), in which the Court found constitutional the two-to-three hour detention in handcuffs of a non-suspect resident of a house being searched pursuant to warrant, it cannot be said that it was clearly established on June 10, 2002, that this detention was unreasonable in length. Thus, Defendants are entitled to qualified immunity, even if the detention was excessive.

Wherefore, the Clerk is **ORDERED** to enter judgment in favor of Defendants and against Plaintiffs and to terminate the instant case.

**DONE** and **ORDERED** this Friday, December 30, 2005.

                                                    s/Thomas M. Rose
                                         _____
                                                  THOMAS M. ROSE
                                          UNITED STATES DISTRICT JUDGE